[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Mendon, Vermont, on December 21, 1988. They have been living separate and apart since January 1998.
The defendant husband ("husband") is 49 years old and in apparent good health. He indicated for the record that he was diagnosed with hepatitis C but he is taking interferon treatments which do not impact on his ability to earn a living. The husband earned a B.A. in math and economics at Clark College as well as an M.A. and doctoral courses at the University of Pennsylvania where he taught for some time. It is a first marriage for him. At the time of the marriage, he was employed by J.P. Morgan Securities earning approximately $100,000 per year. He is currently a senior executive with a division of Citigroup. His base annual salary before taxes and other deductions is approximately $215,000. Last year his gross bonus was $560,000. In addition, his financial affidavit indicates that he receives approximately $20,000 in investment income. As he has climbed the corporate ladder during the parties' marriage, he has been compensated not only with increasingly larger salary and bonus, but also with corporate perks, not the least of which are retirement benefits and stock options both of which are substantial. He currently resides in an apartment in Stamford, Connecticut.
The plaintiff wife ("wife") is 45 years old and this is a second marriage for her. The wife spent two years at the Fashion Institute and, at the time of the marriage was working as a sales executive for Blassport in New York City earning approximately $50,000 a year. Since the marriage and in particular since the birth of the children she has had no significant work experience outside of the home. About five years ago, she formed Filatov Design Company specializing in interior design and home furnishings. The husband has advanced family monies by way of start-up expenses, but the company has failed to show a profit as of this date. Her health is apparently generally good.
The parties have two minor children, Jason 11 and Michael 8, who reside with their mother in the family home at 225 Marvin Ridge Road in New Canaan, Connecticut. Both boys attend King Low Heywood School. The younger boy suffers from asthma and has been described as having some CT Page 8441 behavioral problems. The older boy also has had some problems adjusting to the situation. Attorney Mark Henderson was appointed by the court to be attorney for the minor children, and it was represented to the court that he is working on a parenting plan, although, as of this date no such plan has been submitted to the court. The parties reached a temporary parenting plan pendente lite; this by its terms expired on March 31, 2001. Both parties appeared to have a loving relationship with both children, although each expresses it in their own fashion. The wife indulges the children through frequent travel. The husband, on the other hand would appear to interact with them on a participatory level as well as taking them to school on occasion. All four enjoy skiing.
The parties real estate in New Canaan is described as a four bedroom home on 3 1/2 acres. It was purchased in 1995 for $1,320,000. The parties used $320,000 for the down payment and financed the balance with a mortgage. They have offered differing opinions as to its current fair market value ranging from the wife's $1,475,000 to the husband's $1,520,000. There is some disparity on the respective financial affidavits with regard to the amount of existing mortgage of between $910,000 and $939,000. Hence the equity fluctuates between $536,000 and $610,000. In addition, the husband has what he describes as the "equitable distribution account" at Smith Barney. This account holds approximately $278,500. This is the balance left over from his portion of approximately $360,000 in pendente lite distributions to each of the parties. According to the testimony of the husband, the wife has virtually spent her entire distribution.
The most significant assets of the parties are the husband's stock options and retirement benefits. These are clearly the bulk of the assets as well as the larger source of contention as to value and equitable distribution. Some of the stock options are vested while others are unvested. Virtually all of them have some restrictions and or incentives built in as a matter of course. The court heard significant testimony from the parties as well as their experts.
There are other miscellaneous assets including some bank accounts, individual retirement accounts, stocks, cars, and home furnishings.
The court heard considerable amount of testimony by each party with regard to the fault of the other party as it related to the causes of the breakdown of the marriage as they saw it. According to testimony of both parties, they met in 1985 at a support group for drug users in New York City while they both were just starting their careers. They lived together for a while before marriage, and upon marriage moved to an apartment in New York City. The husband accepted a position in England and the family lived there for several years. The couple's second child was CT Page 8442 born during this time. Upon their return to the U.S., they purchased the current home in New Canaan.
The husband has been described by the wife as having a volatile and explosive temper; that he is hypercritical and, due to his work hours (mainly by his choice), he is virtually never around the home to help with the boys or to lend a sympathetic ear to her. The court finds the wife's testimony to be very credible in this regard. The court has observed the husband to be an intelligent, highly-motivated workaholic, who is literally driven to succeed. It is clear that his career takes priority over all else — no exceptions. This court believes that he holds to the misguided notion that his corporate advancement and the attendant financial benefits are the true measure of his success as a provider for his family, and that he feels that his near Herculean efforts at work are under-appreciated by his wife. In particular, during the latter stages of the marriage, he feels that she has used him simply as a source of income to continue the high standard of living to which she has become accustomed. The court believes that his efforts are in fact under-appreciated, and that he has been so used. However, the court observes that while the husband's obvious talents have resulted in financial security for his family, yet he is sadly lacking in the ability (or willingness) to provide the emotional component necessary to sustain a viable marriage. The husband seems to think that he can have it all — a loving wife, well-adjusted children, an occasional game of golf and to reach the pinnacle of success in a demanding career. This court finds that while this may be true in the long run; it almost never happens all at the same time, at least not without a superhuman effort onall fronts.
The wife, on the other hand, has retreated into a cocoon of sybaritic self indulgence. The husband claims that the wife does very little housework or other chores around the house. In fact, the testimony is quite clear that for a significant portion of their marriage she has had paid help to perform the housework and to assist with the rearing of the children. If the husband has failed to show her sufficient interest, she has certainly made up for the lack by pampering herself. The court heard considerable testimony with regard to her numerous vacations, her out of control spending habits, as well as several risky sexual adventures, including, more recently, an affair with a young man half her age who was hired to look after the boys. Based on the evidence presented to the court, including the testimony of the husband and other witnesses, as well as the court's observation of the wife's demeanor, it finds the husband's testimony to be very credible in this regard.
The court makes the further observation that the marriage has been coming unraveled for a considerable period of time, and that for the CT Page 8443 foregoing reasons, the court finds that each party, in his or her own way, must bear equal responsibility for the breakdown of the marriage.
 FINDINGS
The Court, having heard the testimony of both parties and their witnesses, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
 4. That the parties have agreed to work with Mark Henderson, Esq. in the development of a Parenting Plan, and that it is appropriate that the court reserve jurisdiction with regard to any issues which may arise therewith.
 5. That the wife has a demonstrated earning capacity of at least $50,000 per year based upon her education and previous work experience, however, given the ages of the children and their problems, it is not desirable that she seek full time employment at this time; that the family has had a recent history of help with the care of the children as well as the housekeeping tasks, so it would be desirable and appropriate that she seek part-time employment. Section 46b-82 C.G.S.; and that given the length of the marriage, her age, and earning capacity, time-limited alimony is appropriate. In addition, the court further finds that the husband has a demonstrated minimum earning capacity in excess of $750,000 per annum, including the cash component of any bonus, and that it would be equitable and appropriate to base any alimony and support orders thereon.
6. That based upon the evidence, the court finds that CT Page 8444 the fair market value of the real property located at 225 Marvin Ridge Rd., New Canaan, Connecticut is $1,500,000; that there is a mortgage with a current balance of approximately $925,000; and that there is equity in said property in the amount of approximately $575,000.
 7. That each of the parties brought certain assets to the marriage; that the husband's assets at that time, including cash, furnishings, paintings, IRA, 874 shares of J.P. Morgan stock, and his Deferred Profit Sharing Plan account at J. P. Morgan Securities; and that the wife's assets at that time included furnishings and cash (including the wedding gift of her mother in the amount of $25,000).
 8. That at the time of the marriage, the husband was vested in a certain retirement plan at J.P. Morgan Securities entitled Deferred Income Benefit award (DIBA); and that it is equitable and appropriate that the wife share in any contributions and appreciation thereto for the period starting with the date of the marriage to and including the date of this Memorandum of Decision.
 9. The court further finds that since the date of his employment with Citigroup (and its predecessors Salomon Smith Barney and Travelers) in November 1993, the husband has a vested interest in certain retirement benefits he has received as well as substantial deferred compensation benefits due to past and future service, mainly in the form of restricted stock and stock options, vested and non-vested; and that said property is marital property subject to equitable division pursuant to Section 46b-81 C.G.S. Bornemann v. Bornemann, 245 Conn. 508 (1998).
10. That based upon the evidence and the expert testimony at trial, using the date of employment as a starting point, the restricted stock and stock options have an aggregate after-tax value of approximately $1,700,000 as of the date of the decree. CT Page 8445
 11. That according to the testimony of James Dietzel, the manager of all equity based programs of the husband's current employer Citigroup, the awards of restricted stock and options are made for the purpose of "tying the interest of the company and key management," or in other words, the company "hopes retain the future services" of valuable employees; and that a determination of an employee's value is based in part upon "past performance as a measure of future performance."
 12. That from the date of the marriage in December 1988 to and including the date of the separation of the parties in January 1998, a total of approximately 121 months, the wife made contributions to the advancement of the husband's career, including the maintenance of the family home, the rearing of the two minor children, and the entertainment of business associates, in particular during their stay in England.
 13. That it is equitable and appropriate that the wife share in the value of all restricted stock and stock options, both vested and non-vested, that were granted to the husband during the period beginning with the date of his employment (November 1993) to and including the date of this Memorandum of Decision; and that it is also equitable and appropriate for the court to adjust any award to the wife in light of the fact that the parties have been separated since January 1998, and since that date her contribution to the maintenance and preservation of these assets has been limited. Wendt v. Wendt, 59 Conn. App. 656, 663-64 (2000).
 14. That based upon the testimony before the court, the parties have filed separate state and federal income tax returns since 1998; that the husband may be entitled to an income tax refund for the calendar year 1999 in the amount of $50,000; and that it is equitable and appropriate that the husband retain this free and clear of any claims by the wife.
15. That based upon pendente lite agreements dated CT Page 8446 August 16, 1999, February 15, 2000, and August 14, 2000, the parties have received advanced distributions of their marital assets in a cumulative amount of $360,000; that the wife has, without the consent of the husband or order of the court, used for her benefit additional marital assets in the approximate amount of $130,500 in derogation of the Automatic Orders (Practice Book Section 25-5) which assets are no longer available for division; and that it is equitable and appropriate for the court to take these advanced distributions and the wife's unilateral withdrawals into consideration when dividing the marital assets.
 16. That there is ample evidence before the court that the minor children derive a substantial benefit from their current enrollment at the King Low Heywood School in Stamford, Connecticut; that it is in their best interest that they continue there; and that it is equitable and appropriate that there be a deviation from the Child Support and Arrearage Guidelines Regulations and that husband pay all tuition and reasonable costs associated therewith. Section 46b-215a-3(b)(6)(B).
 17. That the debts of the wife as shown on her financial affidavit as on file with the court were incurred by her primarily for her benefit since the date of the separation of the parties; and that since the date of the separation of the parties the husband has provided her with reasonable support within the meaning of Section 46b-37 (d) C.G.S.
 18. That the presumptive minimum basic child support is $566 per week, but that it is equitable and appropriate to deviate from the Child Support Guidelines on the basis of the coordination of total family support. Section 46b-215a(b)(5).
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, CT Page 8447 and they are each hereby declared to be single and unmarried.
 2. The parties shall have joint legal custody of the minor children, JASON, born November 21, 1989, and MICHAEL, born October 6, 1993. The primary residence of the minor children shall be with the mother, subject to the reasonable, liberal and flexible visitation rights of the father. Until further order of the court, or until the implementation of an appropriate parenting plan, basic visitation with the father shall continue in accordance with the most recent pendente lite agreement, together with such other times as the parties may agree. The parties shall work with Mark Henderson, Esq. in order to effect an appropriate parenting plan. The parties shall consult with one another concerning all major issues involving the minor children, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office prior to a determination by the Court.
 3. Commencing July 1, 2001, and monthly thereafter, the husband shall pay to the wife the sum of $8,000 as and for periodic unallocated alimony and child support, until the death of either party, the remarriage of the wife, or June 30, 2008, whichever shall sooner occur.
In addition, commencing January 1, 2002 (or at such later time as the husband is in receipt of the cash component of his annual bonus ("cash bonus")for the previous calendar year) and annually thereafter, the husband shall pay to the wife 36% of his gross cash bonus, up to and including a cash bonus in the amount of $785,000, as and for periodic unallocated alimony and support, until the death of either party, the remarriage of the wife, or January 1, 2009, whichever shall sooner occur. If alimony shall terminate prior to December 31st in any year, except for the death of either party, the payment normally due the following January (or CT Page 8448 following receipt of same whichever is later) shall be prorated based upon the number of days up to and including the day of termination of said alimony. Said additional payments shall be made within thirty (30) days after his receipt of same. THE FOREGOING NOTWITHSTANDING, commencing July 1, 2001, and monthly thereafter, the husband shall pay to the wife the sum of $14,000 in advance of receipt of said annual cash bonus, which sum shall be deemed a minimum amount in all events, and that the annual payment to her shall be by way of adjustment so as to pay to the wife the difference, if any, between the sum of the monthly advance payments and the husband's actual obligation as set forth above. In the event that the annual cash bonus is less than $500,000, the husband shall have the right to move for modification of the amount of this obligation, otherwise said minimum alimony payment shall be unmodifiable on that basis alone.
 The term of alimony shall not be modifiable by either party pursuant to Section 46b-86(a) C.G.S. The wife shall have the right to earn up to $50,000 per annum from employment before the husband shall have the right to seek a modification on that basis alone.
In the event that the alimony shall terminate for whatever reason and either or both children are minors, commencing with the first day of the first month following such termination, and monthly thereafter, the husband shall pay to the wife a sum consistent with the then existing Child Support Guidelines or as the court may otherwise direct, as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall again be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84(b) C.G.S. CT Page 8449
 4. The husband shall pay tuition and all reasonable expenses (including books, supplies, and activity fees) for each of the children to attend King Low Heywood School. In the event that either or both minor children are enrolled in and attend another private school as a non-boarding day student, the husband shall pay tuition and all reasonable expenses as set forth above, provided that the choice of such other school is based upon the agreement of both parties or upon further order of this court based upon a finding that it is the best interest of the minor child or children, as the case may be.
5. As to the jointly-owned real estate at 225 Marvin Ridge Road, New Canaan, Connecticut, within thirty (30) days from the date hereof, the husband shall convey all of his right, title, and interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the wife shall have exclusive possession of the real estate, subject to the existing indebtedness, and she shall be responsible for the payment of all mortgages, liens, taxes, and insurance, including any outstanding or delinquent amounts, and she shall indemnity and hold the husband harmless from any further liability thereunder. The wife shall pay to the husband the sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or the obtaining of new or additional financing, or ten (10) years from the date of this Memorandum of Decision, whichever shall sooner occur. The wife shall execute a simple Promissory Note to the husband containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of her default, and which shall not bear interest if paid on or before the end of such ten-year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the deed and note shall be executed CT Page 8450 simultaneously with the delivery of the Quit Claim Deed to the husband. The wife shall use her best efforts to refinance the existing mortgage/home equity line and/or otherwise eliminate any obligations of the husband thereunder within ten (10) years from the date of this Memorandum of Decision. In addition, the wife shall be entitled to any existing credit for broker's fees upon the sale.
 6. Except as to assets divided per paragraph 7.D.9) herein, the balance of all restricted stock as well as stock options (including but not limited to Restricted Citigroup stock, CAP stock options, Citigroup stock option plan, Founders stock options, Reload options, and Wealthbuilder options, whether derived from his current employment or a predecessor), vested or non-vested, based upon grants made on or before the date of this Memorandum of Decision shall, after the payment of applicable state and federal taxes, at the time of the vesting, each be divided pro-rata as follows:
60% to the husband
40% to the wife
 The foregoing notwithstanding, the husband, at his sole option, may retain title to any or all of these assets and at the time of vesting of each pay to the wife in cash a sum equal to her net share.
7. Personal property shall be divided as follows:
 A. The children's furniture shall remain in the marital residence at 225 Marvin Ridge Rd., New Canaan, Connecticut.
B. The remaining home furnishings at the premises at 225 Marvin Ridge Road (other than the children's furniture or any remaining clothing and personal effects of the husband) shall be the property of the wife free and clear of any claims by the husband. CT Page 8451
 C. Each party shall be entitled to keep the automobile(s) which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same; each shall be responsible for any liens or leasehold interests thereon and shall indemnify and hold the other party harmless from any further liability in connection herewith.
D. Other Personal Property
 1) The husband shall be entitled to keep any state or federal income tax refunds for the year 1999 free and clear of any claims by the wife.
 2) The husband shall return the pearl necklace to the wife within seven (7) days from the date of this Memorandum of Decision; thereafter the wife shall own same free and clear of any claims by the husband.
 3) The husband shall be entitled to keep the Austin Healy 3000 free and clear of any claims by the wife. The wife shall cooperate with the husband regarding the transfer of this vehicle, including, but not limited o, [to], the execution of any necessary documentation.
 4) The husband shall be entitled to keep the Concord watch which was a gift from the wife's mother and stepfather free and clear of any claims by the wife; the wife shall be entitled to keep the Vacheron watch free and clear of any claims by the husband.
 5) The husband shall be entitled to keep all of his accumulated air miles free and clear of any claims by the wife.
6) The wife shall be entitled to maintain the Darien Country Club tennis membership and the husband shall maintain the Oronoque Country Club golf membership. Each party respectively shall be entitled to any stock or capital CT Page 8452 account in connection therewith, and shall be responsible for any outstanding fees, capital assessments, and charges as of the date of this Memorandum regarding the membership to which they have been awarded, and each shall indemnify and hold the other harmless from any further liability thereunder. Each party shall cooperate with the other in the execution of any documentation related to the transfer of membership, and each, consistent with the rules and regulations of the respective clubs, shall not oppose the application of the other to membership if he or she so chooses to apply in the future.
 7) The husband shall be entitled to keep the oriental rug free and clear of any claims by the wife.
 8) The husband shall be entitled to keep his apartment security deposit free and clear of any claims by the wife, as well as any outstanding sums due from his employer as and for reimbursement for business expenses incurred.
9) The husband shall be entitled to the current balance in Smith Barney account #232-8113812-494, having a current balance of approximately $280,000 free and clear of any claims by the wife, which sum represents the balance of his share of the agreed upon pendente lite equitable distributions to each party. In addition, the husband shall be entitled to the balances in Smith Barney accounts #232-8010513-594 and #232-8282310-494
as well his Fidelity Investment account free and clear of any claims by the wife in part to offset the family assets used by the wife pendente lite in derogation of the automatic orders. Likewise, Smith Barney account #232-822419-494 shall be divided 60% to the husband and 40% to the wife and the husband shall transfer her share of the above accounts to the wife within seven (7) days from the date hereof. The Coutts Co. account shall be CT Page 8453 divided equally by the parties. The husband shall be entitled to keep the balance in his Chase Bank account and the wife shall be entitled to keep the balance in her Summit Bank checking account free and clear of any claims by the other.
 10) The wife shall within thirty (30) days of this Memorandum of Decision transfer her interest in the Tagatay Golf Course limited partnership to the husband who shall own same free and clear of any further claims by the wife.
 11) Except as to any other provision of this Memorandum of Decision regarding the husband's obligation to maintain life insurance on his life for the benefit of the wife and minor children, the husband shall be entitled to retain ownership of the Northwestern Mutual Life insurance policy on his life, including the cash value, free and clear of any claim by the wife.
 12) Except as otherwise set forth herein, the husband shall be entitled to 874 shares of J.P. Morgan stock free and clear of any claims by the wife. The balance of the J.P. Morgan stock (approximately 162 shares) together with their joint stock, including the Citigroup stock, (1841 shares) shall be divided equally by the parties.
8. The retirement accounts shall be divided as follows:
A. As to the J.P. Morgan Securities/Morgan Guaranty Pension Plan:
Effective as of the date of this Memorandum of Decision, that portion of the husband's J.P. Morgan Pension Plan ("Plan")of the through his prior employer (Morgan Guaranty/J.P.Morgan Securities) and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the husband's attorney, 55% to CT Page 8454 the husband and 45% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 100% of that portion of the survivor benefit vested and accrued as of the date of this Memorandum of Decision. Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 Any attorney fees and costs incurred by the husband in the preparation and filing of the QDRO shall be borne by the husband.
 2. As to the J.P. Morgan/Morgan Guaranty Defined Income Benefit Award (DIBA):
Effective as of the date of this Memorandum of Decision, that portion of the husband's J.P. Morgan/Morgan Guaranty Defined Income Benefit Award (DIBA) ("Plan") his prior employer (Morgan Guaranty/J.P.Morgan Securities) and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the husband's attorney, 55% to the husband and 45% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 100% of that portion of the survivor benefit vested and accrued as of the date of this Memorandum of Decision. Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing CT Page 8455 of the QDRO and the division of the Plan.
 Any attorney fees and costs incurred by the husband in the preparation and filing of the QDRO shall be borne by the husband.
C. As to the Citigroup/Travellers Pension Plan:
 Effective as of the date of this Memorandum of Decision, that portion of the husband's Citigroup Pension Plan ("Plan") through his current employer (Citigroup) and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the husband's attorney, 50% to the husband and 50% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 100% of that portion of the survivor benefit vested and accrued as of the date of this Memorandum of Decision. Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 Any attorney fees and costs incurred by the husband in the preparation and filing of the QDRO shall be borne by the husband.
D. As to the Citigroup/Traveler's 401k Plan:
Effective as of the date of this Memorandum of Decision, that portion of the husband's Citigroup 401k Plan ("Plan") through his current employer (Citigroup) and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the husband's attorney, 50% to the husband and 50% to the wife. CT Page 8456 Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 Any attorney fees and costs incurred by the husband in the preparation and filing of the QDRO shall be borne by the husband.
E. As to the Individual Retirement Accounts:
 The husband shall be entitled to keep his TIAA/CREFF Rollover IRA as well as his Fleet IRA
free and clear of any claims by the wife. The wife shall be entitled to keep her Fleet IRA and her Peoples IRA free and clear of any claims by the husband. The balance remaining in the J.P. Morgan Rollover Individual Retirement Account as of the date of this Memorandum of Decision shall be divided 50% to the husband and 50% to the wife, and the husband shall, within thirty (30) days, transfer to an individual retirement account as specified by the wife by way of a tax free transfer a sum sufficient to accomplish this division.
9. The husband shall maintain a portion of his existing life insurance in the face amount of $1,500,000, and shall name the wife and minor children as beneficiaries thereof in the face amount of $500,000 each, for so long as he has an obligation to pay alimony and child support under the terms of this decree. Upon the termination of the obligation to pay alimony for any reason, the husband's duty to provide life insurance for the wife shall cease, and his only obligation shall be to maintain same for each child so long as he shall have an obligation for child support hereunder. The purpose of the life insurance is to assure a continuation of family support in the event of the husband's death and not by way of a property distribution. Accordingly, in the event that a CT Page 8457 sufficient amount of life insurance is no longer available to the husband either as an incident of his employment and/or at a reasonable premium, and the husband is unable to substitute or obtain equivalent coverage at a reasonable premium, he shall have the right to seek a modification of this obligation.
10. Health Insurance:
 A. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. The wife shall be solely responsible for the payment of any premiums due for such coverage.
 B. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor children, shall be divided by the parties, 75% by the husband and 25% by the wife. The provisions of Section 46b-84(e) C.G.S. shall apply.
 11. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
12. The husband shall within thirty (30) days from the date of this Memorandum of Decision pay to the wife a sum not to exceed $50,000.00 as and for attorneys fees and costs (including any expert fees) incurred by the wife in connection herewith which are outstanding as of the date hereof any sums over and above this sum shall be her sole responsibility. The husband shall be responsible for his own fees (including any expert fees) and costs incurred herewith. In addition, the husband shall, within thirty (30) days from the date CT Page 8458 hereof pay the outstanding balance of any fees of Mark Henderson, Esq, as attorney for the minor children.
 13. The wife shall be entitled to claim the personal exemption for each of the minor children commencing with the tax year 2001 and thereafter.
 14. The Court hereby orders a Contingent Wage Withholding Order pursuant to Section 52-362 C.G.S in order to secure the payment of the alimony and child support orders.
 15. The court shall retain jurisdiction with regard to any issue which may arise regarding the creation and implementation of the Parenting Plan, the preparation and filing of any Qualified Domestic Relations Order, and the division of the restricted stock and vested and non-vested stock options.
THE COURT
SHAY, J.